```
                  UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF LOUISIANA
```

MARCUS PHELPS                                       CIVIL ACTION

VERSUS                                              NO. 06-0833
                                                    c/w 05-2148

BULK III INC., ET AL                                SECTION "F"

                           ORDER AND REASONS

   Before the Court is the defendant's motion for summary judgment.  For the reasons that follow, the motion is DENIED.

   On February 19, 2005, Marcus Phelps injured his spine when the spreader bar attached to the crane barge Bulk III struck him in the back. At the time, Phelps was working as a flagman and lead man in the hold of the Annika N, a vessel on the Mississippi River near Convent, Louisiana.

   Marcus Phelps worked with St. James Stevedoring Company ("St. James") for only five days. He worked from February 14 to February 19, 2005, except for February 17.  Mr. Phelps worked in the hold of the vessel, on the deck of the crane barge, or in the hold of the river barge. His duties involved pulling bags out of the vessel, loading bags into the river barge, and removing and replacing covers on the river barge. Beyond training, none of plaintiff's duties were based on land, structures, or platforms. Mr. Phelps went home at night, but ate his meals and used the restrooms on the vessels.

   On February 14, Mr. Phelps trained for five hours. He then

                                    1

spent four hours placing super bags into a crane barge, the Bulk I, either on the deck of the barge, or in the hold. The following day Phelps was assigned to the crane barge Bulk III, and worked for twelve hours doing the same job. On February 16, Phelps worked for nine and a half hours as a trainee on the same job. Mr. Phelps did not work on February 17. On February 18, he worked for twelve hours in the hold of the Annika N, as a trainee. On the day of the accident, Phelps reported to work at 6:00 A.M. and was transported to the hold of the Annika N by boat, where he worked until he was injured at 12:55 P.M. After his injury, a second crane barge moved into place, moored, and lifted Mr. Phelps to the deck, where he was helicoptered to the hospital.

Phelps sued St. James for personal injury, and later filed a separate Jones Act suit, alleging that he was a Jones' Act Seaman under 46 U.S.C. § 688. The two cases were consolidated. St. James now moves for summary judgment, contending that plaintiff is not a Jones Act Seaman.

## I. Standard for Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is proper if the record discloses no genuine issue as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co.

v. Zenith Radio., 475 U.S. 574, 586 (1986).  A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court emphasizes that the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion.  See id.  Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate.  Id. at 249-50 (citations omitted).  Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987).  Finally, in evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.

    A.   Jones Act: Defendants fail to establish Phelps is not a seaman.

"To survive a motion for summary judgment, the plaintiff must

demonstrate a factual dispute regarding the permanency or the substantiality of his employment relationship with a vessel or group of vessels, and that his work contributed to the operation or function of the vessel or the accomplishment of its mission." See Buras v. Commercial Testing & Eng'g Co., 736 F.2d 307, 309 (5th Cir. 1984) (citing Betrand v. Int'l Mooring & marine, Inc., 700 F.2d 240, 244 (5th Cir. 1983)). Because the determination of seaman status is a mixed question of law and fact, it is usually inappropriate to take the question from the jury. Harbor Tug & Barge Co. v. Papai, 520 U.S. 548, 554 (1997). However, summary judgment is appropriate where the facts and the law will reasonably support only one conclusion. Id. "On the other hand", the Supreme Court reminds us, "[i]f reasonable persons, applying the proper legal standard, could differ as to whether the employee was a 'member of a crew,' it is a question for the jury." Chandris, Inc. v. Latsis, 515 U.S. 347, 369 (1995) (quoting McDermott Int'l, Inc. v. Wilander, 498 U.S. 337, 356 (1991)).

To qualify as a Jones Act seaman, one must show that: 1) his duties contributed to the function of the vessel or to the accomplishment of its mission; and 2) his connection with the vessel in navigation (or an identifiable group of vessels) was substantial in both its duration and nature. Chandris, 515 U.S. at 368. "To satisfy the first prong of the Chandris test, the claimant need only show that he 'do[es] the ship's work.'" In re

4

Endeavor Marine, Inc., 234 F.3d 287, 290 (5th Cir. 2000). This requirement is very broad. Id. There is no dispute between the parties that plaintiff, who worked loading and unloading vessels for St. James, contributed to the function of St. James' fleet of vessels and the accomplishment of the vessels' missions.[1]

Rather, the dispute concerns the second prong of the Chandris test. The second part of the Chandris test is conjunctive: it requires a connection to a vessel in navigation substantial in both "duration and nature." Roberts v. Cardinal Servs., Inc., 266 F.3d 368, 374 (5th Cir. 2001). To determine whether his connection with the vessel was substantial in nature and duration,

> the total circumstances of an individual's employment must be weighed to determine whether he had a sufficient relation to the navigation of vessels and the perils attendant thereon. The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time.

Chandris, 515 U.S. at 370 (citations omitted).

The Fifth Circuit has identified a 30 percent temporal benchmark for service on a vessel in navigation for a worker to qualify as a seaman:

---

[1] In fact, defendants stipulate that Phelps satisfies the first prong of the Chandris test.

5

> [W]hen a group of vessels is at issue, a worker who aspires to seaman status must show that at least 30 percent of his time was spent on vessels, every one of which was under his defendant-employer's common ownership or control.

Roberts, 266 F.3d at 377.

St. James does not dispute that its barges are an identifiable fleet under common ownership or control. Further, defendant makes no effort to distinguish the Bulk I, Bulk III, or Annika N in any way. Neither does defendant distinguish a crane from river barges. On the contrary, the photographs and affidavits supplied by plaintiff indicate that defendant's barges are vessels afloat in the Mississippi River, some ocean-going, and some used for loading purposes. Moreover, the record reflects that Phelps worked on defendant's vessels no less than 90% of his job time.

Defendant's argument that Phelps' five-day tenure with St. James should preclude a finding of seaman status is of no merit. Under the "no snapshot" doctrine articulated in Chandris, a court does not evaluate the worker's connection to a vessel or fleet at the moment of injury. 515 U.S. at 362-64. Rather, the court considers the worker's intended relationship as if he had continued his employment uninjured. Id. Defendant has presented no evidence demonstrating that Phelps would not have continued working in a similar capacity for St. James were he not severely injured on February 19, 2005, or that he was a mere temporary employee. Further, the case cited by defendants in support of their five-day

theory dictates only that a worker who has not satisfied the 30% threshold cannot base a claim for seaman status on the expectation of future employment. Sikorski v. Halliburton Energy Serv. Inc., 2005 WL 1574443, at *3 (E.D.La. April 04, 2005). Considering that defendants have failed to prove Phelps worked less than 30% of his time aboard a vessel in navigation, Sikorski's holding is irrelevant to a determination of Phelps' status as a seaman.

Defendant's argument that the nature of Phelps' job precludes him from qualifying for seaman status is also flawed. Defendants argue that Phelps was doing "traditional land based longshore work." The Chandris Court stressed that the seaman inquiry is a "status-based standard." 515 U.S. at 358. "[I]t is not the employee's particular job that is determinative, but the employee's connection to a vessel." Id. at 364. Therefore, a ship repairman engaged in traditional longshoreman work may qualify as a seaman if he has the necessary "employment-related connection" to a vessel. Id. at 363-64 (citing Southwest Marine, Inc. v. Gizoni, 502 U.S. 81, 89 (1991)). The Fifth Circuit has held that a crane operator permanently assigned to a cargo vessel in the Mississippi River qualified as a seaman where the vessel's primary purpose was loading cargo, and the worker was regularly exposed to perils of the sea. In Re: Endeavor Marine, Inc. v. Tako Endeavor, 234 F.3d 287, 292 (5th Cir. 200).

Although defendants' exhibits demonstrate that Phelps worked

primarily loading and unloading cargo, the statement that Phelps was engaged in "traditional land based longshore work", even if true, is not dispositive of seaman status. See Chandris, 515 U.S. at 358.  St. James has offered no proof that the vessels Phelps worked on were not primarily for unloading cargo. See in Re: Endeavor, 234 F.3d at 292. Neither do St. James' exhibits rule out a conclusion that Phelps was exposed to the perils of the sea. Id. On the other hand, plaintiff provides a record from OSHA proceedings against St. James, where defendant alleged that "employees aboard the crane barges are seamen. They are employed in a more or less permanent status and contribute to the function of the barges, notwithstanding that some jobs are not traditionally considered classic sailor jobs." Considering the "total circumstances of an individual's employment", defendant has failed to rule out that Phelps substantially contributed to any of defendant's vessels. Chandris, 515 U.S. at 370. At best, material issues of fact remain making summary judgment inappropriate.

    Because reasonable minds could differ as to Phelps' seaman status, the defendant's motion for summary judgment is DENIED.

    New Orleans, Louisiana, November 1, 2007.

                                        _____
                                        MARTIN L. C. FELDMAN
                                    UNITED STATES DISTRICT JUDGE